## In re NEW YORK SECURITY & TRUST CO. OF CITY OF NEW YORK.

(Surrogate's Court, Westchester County. January, 1905.)

**1. DESCENT AND DISTRIBUTION.**

The disposition of personal estate of a decedent is governed by the
law in force at the time of his death.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Descent and Dis-
tribution, § 19.]

**2. SAME—SECOND COUSINS.**

The estate of decedent consisted of securities and government bonds
inherited from her father and mother. She left, her surviving, only first
cousins on her father's side, and also on her mother's side, and a repre-
sentative of cousins on both sides. *Held*, that under Code Civ. Proc. §
2732, as amended by Laws 1898, p. 941, c. 319, second cousins have a right
to a distributive share by representation.

**3. SAME—SOURCE OF PROPERTY.**

Under Code Civ. Proc. § 2732, subd. 5, providing that distribution shall
be to the next of kin in equal degree to the decedent and their legal

representatives, where decedent left cousins on her father's side and on her mother's side, the question of the source of the personal property which decedent owned cannot be considered in determining the rights of the heirs.

In the matter of the accounting of the New York Security & Trust Company of the City of New York, administrator of Emily T. Parker. Decree rendered.

Cary & Whitridge, for administrator.
Simpson, Thacher, Barnum & Bartlett, for Mary J. P. Stewart.
John Lindley, for Charles A. Lindley and Willard P. Lindley.
Thomas Holden, Jr., for Ellen G. Butler.
Bassett & Thompson, for Marie A. Carver and Lizzie W. Stone.
Bird & Tarbox, for Willard Parker.

SILKMAN, S. Emily T. Parker, whose estate is about to be distributed, died April 26, 1903. She was adjudicated insane on August 7, 1897, and the Continental Trust Company of the City of New York was appointed the committee of her property. The New York Security & Trust Company is the successor corporation to the Continental Trust Company, and under the latter title became the administrator of the estate of decedent. The property comprising decedent's personal estate was received by her under the following circumstances: Decedent's father, Grenville Parker, formerly a resident of West Virginia, died prior to January 1, 1882, intestate, possessed of personal property consisting of $18,000 of United States bonds and also of an equitable interest in certain real property in West Virginia. Grenville Parker left, him surviving, a widow and an only daughter, the decedent, Emily T. Parker, as his only heirs at law and next of kin. Under the laws of West Virginia one-third of the property of said Grenville Parker descended on his death to and was inherited by his widow, and two-thirds went to his daughter. Grenville Parker's widow died shortly after he did, and the one-third of his property which she had inherited from him descended to and was inherited by their daughter, Emily. In 1883, long before she was adjudged insane, Emily sold her equitable interest in the West Virginia lands inherited from her father and mother for $18,000. She invested the proceeds in securities, which afterward, upon her being adjudged insane, came into the possession of and were sold by her committee, the proceeds being reinvested, and the securities representing such reinvestments disposed of by her administrator here accounting. The one-third of the $18,000 of United States government bonds which went to her mother came to Emily upon her mother's death, subsequently passing into possession of her committee, who sold the same, and reinvested the proceeds in other securities. All the securities representing the proceeds of the West Virginia lands and the United States government bonds have now been sold and converted into cash ready for distribution. It is agreed that the decedent was, and at all times continued to be, insane from the time she was so adjudicated to the time of her death. She left, her surviving, no husband, no ancestor, brother, or sister, no descendants of brothers

or sisters, and no uncles or aunts, but only descendants of uncles and aunts, namely, nine first cousins—six on the side of the father and three on the side of the mother; and also representatives of two first cousins on the side of the father and one first cousin on the side of the mother.

The questions I am asked to determine are, first, as to the right of second cousins to a distributive share of the estate by representation, and, second, as to the relative interests of the cousins on the father's side and the cousins on the mother's side, as affected by the source from which the property came. Section 2732 of the Code of Civil Procedure, as amended by chapter 319, p. 941, of the Laws of 1898, was the law in force at the date of decedent's death, and controls the distribution of her estate in this proceeding. As this statute is to be construed in the light of authority, second cousins have the right to a distributive share by representation. Matter of Davenport, 67 App. Div. 191, 73 N. Y. Supp. 653, affirmed 172 N. Y. 454, 65 N. E. 275. In the Davenport Case, 81 cousins, descendants of deceased uncles and aunts, were not allowed to take by representation, for the reason, as pointed out in the opinion of the Court of Appeals, that it was not the intention of the Legislature by the amendment of 1898 to let down the bars and to establish such a wide distribution as was adjudicated by the decree of the surrogate, allowing all descendants of deceased uncles and aunts to participate. The court concluded that the surviving nephew and niece and the two uncles and two aunts, being of the same degree of kinship, to wit, the third, it was unnecessary, under the circumstances, to invoke the rule of representation. But we find in the opinion of the Court of Appeals this statement at page 459, 172 N. Y., page 277 of 65 N. E.:

"If, however, the testatrix left no nephew, niece, uncle, or aunt her surviving, but there were descendants of nephews and nieces, and uncles and aunts, then the rule of representation would apply in the same manner as allowed by law in reference to real estate."

The case now under consideration comes within the language used. The class or stock among which division must primarily be made is composed of decedent's cousins only. Had the decedent's estate contained real property to be divided, the second cousins would have been entitled to receive per stirpes the shares the three deceased first cousins would have taken if living. Such first cousins, if living, would each have inherited a share of such real property in his own right, there being no brothers or sisters and no descendants of brothers or sisters living; and as to each deceased cousin there would have been the right by the second cousins to receive the parents' share of such real property by representation. It is a fair construction of the statute of distribution as amended by the Legislature in 1898, and it is in consonance with the opinion of the Court of Appeals in the Davenport Case, to say that, since such second cousins (had there been real property) would have taken a share thereof by representation, they are entitled, under the circumstances existing in this case, to take a share

of the personal property by representation. And thus I dispose of the first question.

Upon the second question counsel have argued with much ingenuity that the sources from which the personal property came to decedent should determine the devolution of the descent and distribution from her, and that such distribution should be made in conformity with those provisions of the statute in reference to the descent of real estate which recognized the source from which the property came. In disposing of this question it would seem that this court is bound by the decision of the Appellate Division in Matter of Davenport, supra. At page 195 of 67 App. Div., page 655 of 73 N. Y. Supp., is to be found the solution. The court there say:

"If the intent of the Legislature had been to distribute personal estate among collaterals in the same manner, to the same persons, and in the same proportions, as real estate descends, no reason can be suggested why apt language should not have announced the radical departure from the long-existing policy of the state. The language of the enactment relates to representation alone, and to representation alone must its construction and effect be strictly limited."

Furthermore, subdivision 5 of section 2732 of the Code of Civil Procedure directs that distribution shall be "to the next of kin in equal degree to the decedent and their legal representatives," and not, as counsel contend, in accordance with the descent of real estate. It is the policy of the law to avoid such a construction of a statute as will lead to and promote litigation. Were it to be held that the source from which personal property came controlled in any way its distribution, untold litigation and uncertainty would result by reason of the difficulty in tracing and identifying personal property.

My conclusion is that each first cousin should receive one-twelfth of this estate, and the remaining three-twelfths should be distributed among the representatives of the deceased first cousins per stirpes. Let findings and decree be submitted in accordance with the views expressed.

Decreed accordingly.